FILED
2013 Mar-25  AM 10:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **CREDIT NATION LENDING SERVICES, LLC,** | } | |
| | } | |
| | } | |
| **Appellant,** | } | |
| | } | **CASE NO. 5:12-cv-1840-SLB** |
| **v.** | } | |
| | } | |
| **LOUIS NETTLES and LINDA NETTLES,** | } | |
| | } | |
| | } | |
| **Appellees.** | } | |

### <u>MEMORANDUM OPINION</u>

This case is before the court on Credit Nation Lending Services, LLC's ("Credit Nation") Notice of Appeal, (doc. 1),[1] from the March 19, 2012 Judgment of the United States Bankruptcy Court for the Northern District of Alabama, Northern Division.  Credit Nation requests this court to reverse the portion of the Judgment discharging appellees Louis Nettles ("Mr. Nettles") and Linda Nettles's ("Mrs. Nettles") (collectively, the Nettles") indebtedness to Credit Nation in the amount of $6,127.54.  Upon consideration of the record, the submissions of the parties, and the relevant law, the court is of the opinion that the Judgment of the bankruptcy court is due to be affirmed.

---

[1]  Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record on appeal.  Reference to a bankruptcy document number, ["B.C. Doc. ___"], refers to the number assigned to each document as it was filed in the Nettles's bankruptcy case.  Reference to an adversary document number, ["Adv. Doc. ___"], refers to the number assigned to each document as it was filed in the Nettles's adversary proceeding.  The Judgment appears as "Doc. 1-1" in this court's record on appeal.  The transcript containing the bankruptcy court's oral findings of fact and rulings appears as "Doc. 2" in this court's record on appeal.

# I.  STANDARD OF REVIEW

District courts have appellate jurisdiction over the judgments, orders, and decrees of bankruptcy courts. 28 U.S.C. § 158(a).  The applicable standard of review regarding findings of fact is set out in Rule 8013 of the Federal Rules of Bankruptcy Procedure, which provides:

> On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.  Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Fed. R. Bankr. P. 8013.  "A factual finding is not clearly erroneous unless this court, after reviewing all of the evidence, [is] left with the definite and firm conviction that a mistake has been committed."  *IBT Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 698 (11th Cir. 2005) (internal quotation marks and citation omitted).  The district court's review of a bankruptcy court's legal conclusions, on the other hand, is *de novo*.  *Club Assocs. v. Consol. Capital Realty Investors* (*In re Club Assocs.*), 951 F.2d 1223, 1228 (11th Cir. 1992).  Likewise, mixed questions of law and fact are reviewed *de novo*.  *See Christopher v. Cox* (*In re Cox*), 493 F.3d 1336, 1340 n. 9 (11th Cir. 2007) (*citing Green Tree Acceptance Inc. v. Calvert* (*In re Calvert*), 907 F.2d 1069, 1071 (11th Cir. 1990)).  "While [the district court] as an appellate court gives deference to all findings of fact by the fact finder if based upon substantial evidence, [the appellate court] freely examines the applicable principles of law to see if they were properly applied and freely examines the evidence in support of any particular finding to see if it meets the test of substantiality."  *Club Assocs.*, 951 F.2d at 1228-

2

29 (internal quotation marks and citation omitted); *See also Verola v. Colton* (*In re Verola*), 336 B.R. 547, 549 (S.D. Fla. 2004) ("*De novo* review requires the Court to make a judgment independent of the bankruptcy court's, without deference to that court's analysis and conclusions." (internal quotation marks and citation omitted)).  A bankruptcy court's decision to award punitive damages pursuant to section 362(k) of the Bankruptcy Code, 11 U.S.C. § 362(k), is subject to *de novo* review.  *In re McBride*, 473 B.R. 813, 821 (S.D. Ala. 2012) (citing *Verela v. Ocasio* (*In re Ocasio*), 272 B.R. 815, 823 (1st Cir. B.A.P. 2002)).

## II.   STATEMENT OF FACTS[2]

On September 30, 2011, the Nettles filed a Chapter 13 bankruptcy petition and plan in the United States Bankruptcy Court for the Northern District of Alabama, Northern Division.  (B.C. Docs. 1 & 8.)  Credit Nation filed a secured proof of claim with respect to the Nettles's 2005 Kia Spectra on October 20, 2011, in the amount of $6,127.54.  (Doc. 2 at 15:3-6.)  The Nettles filed an amended Chapter 13 plan on December 7, 2011, which the bankruptcy court confirmed on December 13, 2011.  (B.C. Docs. 35 & 37.)  The Nettles proposed a monthly fixed payment be made to Credit Nation in the amount of $250.00. (Doc. 2 at 3:16-18.)

---

[2]  For the first time on appeal, Credit Nation offers several additional facts which it did not present to the bankruptcy court for consideration.  It is well settled that "issues that are not actively litigated, or issues that are presented only in a cursory manner before the bankruptcy court are . . . deemed not preserved for appeal."  *In re George's Candy Shop, Inc.*, No. 08-177-KD-B, 2008 WL 2945560, at *3 (S.D. Ala. July 28, 2008) (citations omitted).  The court must limit its consideration to the factual findings of the bankruptcy court, unless those findings were clearly erroneous.

On March 9, 2012, Mrs. Nettles noticed that the Kia Spectra, the couple's only mode of transportation, was missing.  (*Id*. at 7:7-11, 9:7-9.)  After initially contacting the police, Mrs. Nettles called Credit Nation suspecting that the vehicle had been repossessed because, as Mrs. Nettles testified, "this happened last year at this same time with the same people." (*Id*. at 7:14-16.)  A representative of Credit Nation confirmed her suspicion, stating that the vehicle had been repossessed due to a lapse in insurance coverage.  (*Id*. at 7:16-17.)  Mrs. Nettles immediately contacted her attorney, Jeffrey Irby ("Irby"), and the insurance company. (*Id*. at 7:18-20.)  The insurance company emailed Mrs. Nettles verification that the insurance policy remained in effect, as well as sending proof of insurance to Irby and Credit Nation. (*Id.* at 7:20-23.)

Irby then contacted counsel for Credit Nation, Brandon Bryson ("Bryson").  Irby informed Bryson of the Nettles's bankruptcy, faxed him proof of insurance coverage, and requested that the vehicle be returned.  (*Id*. at 12:5-11, 12:13-18.)  Bryson was aware of the bankruptcy proceedings.  (*Id*. at 12:9-13.)  Irby contacted Bryson a second time, again requesting the vehicle's return.  (*Id*. at 12:17-18.)  Bryson provided Irby with a telephone number and stated "[the Nettles] could go and pick the vehicle up."  (*Id*. at 12:19-20.) Bryson indicated that the vehicle was impounded in Georgia.  (*Id*. at 12:21.)  Irby asked, "Are you going to deliver it?" to which Bryson responded, "They can make arrangements to pick it up."  (*Id*. at 12:21-23.)  At that point, Irby advised Bryson that the Nettles "would file a motion with the court seeking for the property to be returned."  (*Id*. at 12:24-25.)

4

On March 12, 2012, the Nettles filed a Motion Seeking Turnover of Property Pursuant to 11 U.S.C. Section 542 and a Motion for Expedited Hearing in the bankruptcy proceeding. (B.C. Docs. 43 & 44.)  Due to a problem with the certificates of service, the Nettles filed amended versions of the prior filed documents on March 13, 2012.  (B.C. Docs. 47 & 48.) That same day, the bankruptcy court set the Amended Motion Seeking Turnover of Property Pursuant to 11 U.S.C. Section 542 for a hearing at 9:00 a.m. on March 19, 2012.  (B.C. Doc. 49.)

Mrs. Nettles also commenced an adversary proceeding on March 13, 2012, by filing a Complaint Seeking Turnover of Property Pursuant to 11 U.S.C. Section 542.  (Adv. Doc. 1.)[3]  The bankruptcy clerk issued a summons on March 14, 2012.  (Adv. Doc. 4.)  The summons and corresponding certificate of service on the Complaint reflect service by mail upon both Credit Nation and "Defendant's Attorney[]" in Atlanta, Georgia.  (Adv. Docs. 1 & 4.)  Also on March 14, 2012, the bankruptcy court set the Complaint for a hearing at 9:00 a.m. on March 19, 2012, and Mrs. Nettles filed an Amended Complaint Seeking Turnover of Property Pursuant to 11 U.S.C. Section 542, which added Mr. Nettles as a plaintiff.  (Adv. Docs. 3 & 4.)  In all the filings seeking turnover of property, the Nettles requested that their vehicle be returned, attorney's fees, punitive damages, and any other relief deemed just and proper.  (B.C. Docs. 43 & 47; Adv. Docs. 1 & 5.)

---

[3] The court assumes that Mrs. Nettles commenced the adversary proceeding because "[a] turnover action is an adversary proceeding which must be commenced by a properly filed and served complaint."  *Matter of Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990) (citations omitted).

5

The bankruptcy court held the hearing as scheduled on March 19, 2012. Mr. Nettles, Mrs. Nettles, and Irby attended the hearing, and local counsel Steve Shaw ("Shaw") appeared on behalf of Credit Nation. (Doc. 2 at 3:7-12.) Neither Bryson nor any representative from Credit Nation attended the hearing. (*See id*. at 3:7-10.)

The bankruptcy court received sworn testimony from Mrs. Nettles and Irby. Mrs. Nettles testified as to the events surrounding Credit Nation's repossession, her contacts with Irby and the insurance company, and the insurance company's provision of proof of insurance coverage to herself, Irby, and Credit Nation. (*Id*. at 7:7-23.) Mrs. Nettles offered into evidence the verification of coverage obtained from the insurance company. (*Id*. at 7:24-8:5.) The document demonstrated that insurance coverage on the vehicle was effective from December 5, 2011, through June 5, 2012, with Credit Nation Lending of Austell, Georgia listed as the lienholder. (*Id*. at 15:13-19.) Irby confirmed that the vehicle was impounded in Austell, Georgia. (*Id*. at 5:22-25.) The bankruptcy court then inquired into the activities the Nettles were unable to accomplish by virtue of having no transportation, to which Mrs. Nettles testified:

> Well, my husband and I both have two different medical problems. He has had three heart attacks and he is also a diabetic. So he has doctor's appointments like maybe once every two days. . . . I have bone spurs in my back and my knees and I have to have injections done. I have missed both appointments because I don't have transportation.

(*Id*. at 8:18-9:2.)

6

The bankruptcy court then placed Irby under oath to testify as to his communications with Bryson.  (*Id*. at 11:24.)  Irby testified that he spoke with Bryson on two occasions prior to seeking the vehicle's return through court intervention.  (*See id*. at 12:13-25.)  Irby testified that he requested that the vehicle be returned on both occasions, faxed confirmation of insurance coverage, and that Bryson provided him a telephone number where the Nettles could "make arrangements" to retrieve the vehicle from Georgia.  (*Id*. at 12:13-23.)  Irby also testified that he spoke with Bryson a third time on March 16, 2012, to ensure that Bryson had received the relevant filings and would be present at the hearing.  According to Irby, Bryson stated, "he would have someone there" and "ask[ed] about sanctions and things of that nature, and I said it was . . . up to the judge."  (*Id*. at 13:1-10.)  The bankruptcy court then inquired into Irby's hourly rate and the amount of hours he worked in seeking the vehicle's turnover.  (*Id*. at 13:11-14.)  The bankruptcy court concluded that Irby incurred approximately $800.00 in costs and expenses based on his testimony.  (*Id*. at 13:15-20.)

Shaw did not cross-examine either witness or present any evidence on behalf of Credit Nation.  He mentioned that, according to Bryson, Irby "seemed disinterested in getting [the phone number of the entity where the vehicle was located] and, as of Friday afternoon, had not made the phone call to make those kind of arrangements at the phone number that [Bryson] gave him where the car was located."  (*Id*. at 11:6-12.)  Shaw was unaware whether the "arrangements" to which Bryson referred were arrangements for the Nettles's retrieval or Credit Nation's delivery of the vehicle, but that Credit Nation was "just waiting on the

phone call." (*Id.* at 6:5-8, 11:15-19.)

At the conclusion of the hearing, the bankruptcy court made oral findings of fact and final rulings. The bankruptcy court concluded that Credit Nation had pre-repossession knowledge of the Nettles's ongoing bankruptcy and that it repossessed the vehicle "in willful and knowing violation of the automatic stay." (*Id.* at 15:7-12, 15:20-22.) The bankruptcy court further concluded that Credit Nation refused to return the wrongfully repossessed vehicle, instead instructing the Nettles to "make arrangements" to retrieve it in Austell, Georgia. (*Id.* at 15:24-16:1, 16:15-23.) The bankruptcy court noted the potential difficulties the Nettles would encounter retrieving their vehicle, especially considering the location of the vehicle, their medical history, and their lack of substitute transportation. (*Id.* at 16:2-10.) The bankruptcy court also noted the inherent difficulties of having a car "unimpounded." (*Id.* at 16:25-17:7.) Describing Credit Nation's conduct as "terribly egregious," the bankruptcy court stated that instead of returning the vehicle and offering the Nettles "some kind of pittance for their time and trouble," "[Credit Nation] slapped them in the face and said you can come over here and get your car, [and] gave them a phone number they could call." (*Id.* at 16:15-23.)

Based upon its findings, the bankruptcy court orally (1) discharged the Nettles's indebtedness to Credit Nation and cancelled Credit Nation's security interest in the vehicle in the amount of approximately $6,127.54, (*id.* at 17:9-13); (2) awarded attorney's fees incurred by the Nettles totaling $800.00, (*id.* at 17:14-19); (3) awarded $200.00 in "punitive

or sanction damages," (*id*.); and (4) ordered that the vehicle be returned to the Nettles's residence by 12:00 p.m. on March 20, 2012, with $1,000.00 in sanctions accruing for each day of non-compliance, (*id*. at 18:7-19).

Following the hearing, the bankruptcy court entered a written Judgment memorializing its oral rulings and incorporating by reference its oral findings of fact. (Doc. 1-1.) This appeal timely followed.

### III.  ISSUES RAISED

Credit Nation asks the court to reverse the portion of the Judgment cancelling the Nettles's debt to Credit Nation in the amount of $6,127.54 and requests that its security interest in the vehicle be reinstated.

The bankruptcy court did not specify its legal basis for discharging the Nettles's debt, nor did the Nettles specify their theory for recovering punitive damages in the turnover action.  Credit Nation characterizes the cancellation as a form of punitive damages rendered pursuant to section 362(k) of the Bankruptcy Code, 11 U.S.C. § 362(k).  Based on this characterization, Credit Nation frames the issues raised on this appeal as follows: (1) Did the bankruptcy court err in discharging the Nettles's debt since the Nettles were not injured in such a way to warrant recovery under section 362(k)?; and (2) Did the bankruptcy court err by finding that Credit Nation's conduct rose to a level warranting the imposition of punitive damages?[4]

---

[4] The court notes that Credit Nation frames the first issue in broader terms.  Specifically, Credit Nation asks in the first issue "[w]hether the Bankruptcy Court erred in awarding *damages*

9

The Nettles see the cancellation as a monetary sanction rendered pursuant to the bankruptcy court's inherent contempt power or statutory contempt power codified in 11 U.S.C. § 105(a).[5]  However, Section 362(k)(1) provided the bankruptcy court with express statutory authority to impose punitive damages for Credit Nation's violation of the automatic stay, assuming punitive damages were warranted under its provisions.  *See* 11 U.S.C. § 362(k)(1) (affording injured "individuals" redress for willful stay violations); *In re Jackson*,

---

for Credit Nation's violation of the automatic stay since Plaintiffs were not injured in such a way to warrant recovery under 11 U.S.C. 362(k)."  (Doc. 4 at 4 [emphasis added].)  A plain reading of this issue suggests that Credit Nation challenges all the damages awarded by the bankruptcy court.  However, the only relief Credit Nation requests is the reversal of the portion of the Judgment discharging the Nettles's indebtedness.  A review of Credit Nation's initial brief and reply brief further demonstrate that Credit Nation only seeks the reversal of the discharge.  Assuming arguendo that Credit Nation sought complete reversal of the Judgment based on lack of injury, the Nettles suffered actual injury for purposes of section 362(k) as explained *infra*.

[5]  Generally, bankruptcy courts invoke their contempt powers to award damages for stay violations only when the debtor is a non-individual.  The Eleventh Circuit, along with the majority of circuits addressing the issue, has concluded that the remedies afforded by section 362(k) are limited to individuals or natural persons and do not extend to corporations or other non-individual entities.  *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1552-53 (11th Cir. 1996); *accord In re Rafter Seven Ranches L.P.*, 414 B.R. 722, 732-33 (B.A.P. 10th Cir. 2009); *Spookyworld, Inc. v. Town of Berlin* (*In re Spookyworld, Inc.*), 346 F.3d 1, 7-8 (1st Cir. 2003); *Sosne v. Reinert & Duree, P.C.* (*In re Just Brakes Corporate Sys., Inc.*), 108 F.3d 881, 884-85 (8th Cir. 1997); *Johnston Env't'l Corp. v. Knight* (*In re Goodman*), 991 F.2d 613, 619 (9th Cir. 1993); *Maritime Asbestosis Legal Clinic v. LTV Steel Company, Inc.* (*In re Chateaugay Corp.*), 920 F.2d 183, 186 (2d Cir. 1990).  Because non-individual debtors are foreclosed from section 362(k) recovery, bankruptcy courts generally award damages to such debtors pursuant to their statutory contempt power under section 105(a).  *See* 11 U.S.C. § 105(a) ("The [bankruptcy] court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."); s*ee also Spookyworld, Inc.*, 346 F.3d at 8; *Eskanos & Adler, P.C. v. Roman* (*In re Roman*), 283 B.R. 1, 14 (B.A.P. 9th Cir. 2002); *Sosne*, 414 B.R. at 733; *Jove*, 92 F.3d at 1554.  However, the court has not uncovered any case wherein a bankruptcy court has awarded damages to an individual debtor, entitled to pursue damages under section 362(k), pursuant to section 105(a).  It remains unclear whether a bankruptcy court may resort to its contempt power to award monetary damages when section 362(k) provides an avenue for such relief.

10

251 B.R. 597, 601 (Bankr. D. Utah 2000) ("Section 542 provides the right to the return of estate property, while § 362(h) provides the remedy for the failure to do so."); *cf. Brown v. Town & Country Sales and Serv., Inc.* (*In re Brown*), 237 B.R. 316, 321-22 (Bankr. E.D. Va. 1999) (cancelling a creditor's security interests in wrongfully repossessed collateral as a form of punitive damages under section 362(h)).[6]  Because, as explained herein, the bankruptcy court did not err in discharging the Nettles's debt as a form of punitive damages pursuant to section 362(k), the court pretermits discussion as to whether the discharge was an appropriate exercise of the bankruptcy court's contempt powers.

## IV.  DISCUSSION

### A.    Were Punitive Damages Warranted Under Section 362(k)?

Under section 362(a)(3) of the Bankruptcy Code, the filing of a bankruptcy petition operates as an automatic stay against "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. . . . It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy."  H.R. Rep. No. 95-595, at 340 (1977), *reprinted*

---

[6]  Section 362(h) of the Bankruptcy Code was renumbered as section 362(k)(1) in 2005. The relevant language in both the former section 362(h) and current section 362(k)(1) is that an "individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  Therefore, the case law interpreting the former section 362(h) is instructive and applicable to this court's analysis.

*in*, 1978 U.S.C.C.A.N. 5963, 6296-97.  Section 362(k)(1) of the Bankruptcy Code provides

individuals injured by a willful violation of an automatic stay with a statutory right to recover

"actual damages, including costs and attorneys' fees, and, in appropriate circumstances, . .

. punitive damages." 11 U.S.C. § 362(k)(1).  "'A willful violation of the automatic stay does

not require a specific intent to violate the automatic stay.'"  *In re Hildreth*, 357 B.R. 650, 655

(Bankr. M.D. Ala. 2006) (quoting *Smith v. Homes Today, Inc.* (*In re Smith*), 296 B.R. 46, 55

(Bankr. M.D. Ala. 2003)).  A "willful violation" simply requires knowledge of the automatic

stay and an intent to perform the actions which violated the automatic stay.  *Id.* (quoting

*Smith*, 296 at 55).  Credit Nation concedes its repossession constituted a willful violation of

the automatic stay triggered by the Nettles's bankruptcy petition.  (Doc. 4 at 19.)

### 1.    Did a Lack of Actual Injury Preclude the Imposition of Punitive Damages?

Credit Nation contends that section 362(k) by its terms requires a demonstration of

actual injury before the debtor is entitled to any recovery.  To that end, Credit Nation argues

that the bankruptcy court erred by discharging the Nettles's debt as a form of punitive

damages because the Nettles failed to establish a compensable injury stemming from Credit

Nation's repossession.  However, the court pretermits discussion as to whether section 362(k)

recovery is conditioned upon a showing of actual injury, because contrary to Credit Nation's

assertion, the Nettles presented sufficient evidence of "actual damages," (*i.e.* a compensable

injury), which the bankruptcy court awarded in the amount of $800.00.

"'[A]ctual damages' are 'real, substantial and just damages, or the amount awarded

to a complainant in compensation for his actual and real loss or injury, as opposed to nominal damages and punitive damages.'" *Cox v. Billy Pounds Motors, Inc.* (*In re Cox*), 214 B.R. 635, 642 (Bankr. N.D. Ala. 1997) (quoting *McMillian v. F.D.I.C.*, 81 F.3d 1041, 1055 (11th Cir. 1996)). More simply, "actual damages" are essentially "compensatory damages." *Id*. As a general rule, actual damages or injury "must be prove[n] with reasonable certainty, and mere speculation, guess or conjecture will not suffice." *Aiello v. Providian Fin. Corp.*, 257 B.R. 245, 249 (N.D. Ill. 2000) *aff'd*, 239 F.3d 876 (7th Cir. 2001).

Credit Nation is correct that Mrs. Nettles's testimony falls short of proving "actual damages" to a reasonable certainty. The only perceivable injuries caused by Credit Nation's repossession are Mrs. Nettles's missed doctor's appointments and Mr. and Mrs. Nettles having to acquire alternative transportation to attend the hearing. The Nettles did not present evidence quantifying these injuries and presented no further evidence of any physical, emotional, or financial harm due to a lack of transportation. Credit Nation is also correct that the speculative, hypothetical difficulties the Nettles may have encountered recovering their vehicle are not "actual damages" or compensable injuries for purposes of section 362(k).

But, Credit Nation ignores the important additional fact that "attorney's fees and costs claimed as damages . . . proximately caused by and reasonably incurred as a result of the violation of the automatic stay" are "actual damages" for purposes of section 362(k). *Grine v. Chambers* (*In re Grine*), 439 B.R. 461, 471 (Bankr. N.D. Ohio 2010); *see also Vazquez Laboy v. Doral Mortg. Corp. (In re Vazquez Laboy),* 647 F.3d 367, 372 (1st Cir. 2011) ("The

13

Debtors claim injury [pursuant to section 362(h)]: they have expended court costs and attorneys' fees in order to vindicate the automatic stay, and the statute mandates that they may recover both as actual damages."); *In re Hedetneimi*, 297 B.R. 837, 842 (Bankr. M.D. Fla. 2003) ("The Court holds that it may award attorney's fees pursuant to § 362(h) even if a debtor has suffered no other compensable harm. However, attorney's fees awarded pursuant to § 362(h) must be reasonable and necessary." (internal citations omitted)).

This case is analogous to *Graham v. Graham* (*In re Graham*), No. 07-4124, 2011 WL 7658757 (Bankr. S.D. Ga. Feb. 25, 2011), wherein the United States Bankruptcy Court for the Southern District of Georgia awarded the debtor attorneys' fees as "actual damages" despite the absence of other compensable injury. In *Graham*, the Chapter 12 debtor's uncle knowingly and repeatedly violated the automatic stay in effect by harrowing the debtor's farmland without authorization. *Id*. at *2. The debtor initiated an adversary proceeding requesting lost profits, attorneys' fees, and punitive damages pursuant to section 362(k). *Id*. at *1. Although the debtor was unable to prove lost profits to a reasonable certainty, the bankruptcy court noted that "[t]he injury in this case is not Debtor's lost profits, but rather the cost of filing this adversary proceeding to prevent future stay violations." *Id*. at *1-2. At the time the adversary proceeding was filed, the uncle had technically ceased violating the stay, "but his actions had evidenced his intent to continue to interfere with Debtor's rights despite the automatic stay." *Id*. at *2. The bankruptcy court concluded that the uncle's "*disregard of the effect of the stay caused Debtor to incur attorneys' fees,*" and, therefore,

14

"[t]hose attorneys' fees incurred by Debtor in commencing and prosecuting this adversary proceeding constitute an injury to Debtor for purposes of 11 U.S.C. § 362(k)." *Id*. at *3 (emphasis added).[7]

At the hearing in this case, there was no question that Credit Nation's failure to return the vehicle and comply with the automatic stay caused the Nettles to enforce their rights through court intervention and incur attorney's fees.  The bankruptcy court concluded that Credit Nation knowingly violated the stay by repossessing the Nettles's vehicle, refused to return the vehicle, and indicated that the Nettles needed to "make arrangements to pick it up" in Austell, Georgia.  A creditor like Credit Nation who wrongfully repossesses property post-petition has "an affirmative obligation to restore the situation to the *status quo*" and "[f]ailure to do so constitute[s] a continuing violation" of the automatic stay.  *In re Combs*, No. 06-10872-WHD, 2006 WL 6591825, at *3 (Bankr. N.D. Ga. Nov. 20, 2006).  Credit Nation's apparent disregard of this affirmative obligation and the Nettles's rights under the automatic stay forced the Nettles to incur attorney's fees to have the vehicle returned.  "Merely making

---

[7] *Graham* distinguished its facts from those in *Hutchings v. Ocwen Fed. Bank, FSB (In re Hutchings)*, 348 B.R. 847 (Bankr. N.D. Ala. 2006).  In *Hutchings*, the United States Bankruptcy Court for the Northern District of Alabama held that the debtor was not entitled to attorney's fees as "actual damages" under section 362(h) (now section 362(k)(1)) in the absence of other demonstrable injury.  348 B.R. at 901-02.  *Graham* found *Hutchings* distinguishable because, not only had the defendant's actions not caused any actual injury, the defendant had completely ceased violating the automatic stay prior to the debtor commencing an action for damages. *Graham*, 2011 WL 7658757, at *2.  As *Graham* correctly pointed out, the bankruptcy court in *Hutchings* noted that "the result would be completely different" if the debtor had been "required to maintain this lawsuit in order to force [the defendant] to desist from further violating the stay, or to prevent [the defendant] from again violating the stay, or to undo the effects of [the defendant]'s stay violations . . . ." *Id*. (quoting *Hutchings*, 348 B.R. at 917).

the [v]ehicle available to the [Nettles] for pick up at a location [in Austell, Georgia] . . . did not restore the situation to the *status quo* as it existed at the time of the filing of the [Nettles's] bankruptcy petition." *Id*. (citations omitted).   Therefore, the attorney's fees incurred by the Nettles and awarded by the bankruptcy court were "actual damages" and a compensable injury for purposes of section 362(k).   Accordingly, Credit Nation's argument that the bankruptcy court erred in imposing punitive damages under section 362(k) for want of actual injury is without merit.

### B.   Did "Appropriate Circumstances" Exist for the Imposition of Punitive Damages?

Section 362(k)(1) empowers bankruptcy courts to impose punitive damages in "appropriate circumstances."   11 U.S.C. § 362(k)(1).   The Bankruptcy Code does not define "appropriate circumstances," but it is well-settled that an award of punitive damages requires more than a willful violation of the automatic stay.   Bankruptcy courts interpret "appropriate circumstances" as requiring "egregious, vindictive, [or] malicious" conduct or conduct "accompanied by bad faith."   *Hutchings*, 348 B.R. at 880; *see also Charles R. Hall Motors, Inc. v. Lewis* (*In re Lewis*), 211 B.R. 970, 975 (N.D. Ala. 1997) ("Additional findings of maliciousness or bad faith on the part of the offender warrants further imposition of punitive damages." (internal quotation marks and citation omitted)) *aff'd*, 137 F.3d 1280 (11th Cir. 1998).

Credit Nation cites *Cox v. Billy Pounds Motors, Inc.* (*In re Cox*), 214 B.R. 635 (Bankr. N.D. Ala. 1997), to support its contention that its conduct was not sufficiently "egregious,

16

vindictive, [or] malicious" to warrant the imposition of punitive damages.  In *Cox*, a creditor repossessed the Chapter 13 debtors' automobile in violation of the automatic stay despite being aware of the underlying bankruptcy proceedings.  *Id*. at 637-38.  The repossession resulted in the debtors' incurring lost wages and one of the debtors losing his newly-acquired job.  *Id*. at 638, 640-41.  Although finding the automatic stay violation "willful," the bankruptcy court declined to award punitive damages under section 362(h) because it remained unconvinced that the creditor had acted with maliciousness or in bad faith.  *Id*. at 640, 645-46.  The bankruptcy court highlighted three factors.  *Id*. at 646.  First, the creditor mistakenly, yet justifiably, believed that the debtors' bankruptcy case had been dismissed. *Id*.  The bankruptcy court found that "this mistaken belief that repossession of the car was legally justified does not excuse the stay violation or resulting liability for compensatory damages and attorney's fees, but it does mitigate against the imposition of punitive damages."  *Id*.  Second, the creditor promptly returned the vehicle after learning that the bankruptcy had not been terminated and that the automatic stay remained in effect.  *Id*. Third, the record lacked evidence that the creditor or the employee repossessing the car knew that one of the debtors was scheduled to begin a new job the day following the repossession. *Id*.

*Cox* reflects the general propensity of bankruptcy courts to decline to award punitive damages where the creditor violates the automatic stay under the misapprehension its actions are legally justified and where the creditor remedies the violation shortly after learning of its

17

mistake. *See Parker v. Pioneer Credit Co. of Ala., Inc.* (*In re Parker*), No. 06-01139, 2007 WL 1889958 (Bankr. M.D. Ala. June 28, 2007) (finding punitive damages unwarranted because creditor mistakenly believed that it had obtained court-approved relief from the automatic stay to garnish debtor's wage) *aff'd*, No. 1:07CV737-MHT, 2008 WL 4183436 (M.D. Ala. Sept. 10, 2008).  Credit Nation's reliance on *Cox* is unpersuasive because the facts therein are readily distinguishable from the evidence presented and the bankruptcy court's findings of fact in this case.

Unlike the facts in *Cox*, the bankruptcy court in this matter reasonably concluded that Credit Nation violated the automatic stay with full knowledge that its post-petition repossession was unlawful.  Credit Nation's knowledge of the bankruptcy proceedings prior to repossession was never in dispute.  Nor did Credit Nation argue that it believed that the purported lapse in insurance coverage automatically relieved it from complying with the automatic stay.  Further, Credit Nation presented no evidence, nor even argued, that it incorrectly believed that it had obtained court-approved relief from the stay or that the stay had been terminated by operation of law.  Also unlike the facts in *Cox*, Credit Nation did not promptly remedy its violation of the automatic stay.  Credit Nation retained possession of the vehicle until the hearing on March 19, 2012, ten days after repossession.  The bankruptcy court considered Credit Nation's retention particularly egregious because Credit Nation knew the automatic stay was in effect prior to repossession; it had received verification that the vehicle was properly insured shortly after repossession; and counsel for Credit Nation

18

indicated that the Nettles would be required to cross state lines and retrieve their vehicle from an impound lot in Austell, Georgia.  Finally, Credit Nation cannot disclaim knowledge that its conduct would cause the Nettles to suffer compensable injury, *i.e.* attorney's fees, since it was specifically informed that the Nettles "would file a motion with the court for the property to be returned."  It can be logically and fairly assumed that Credit Nation was aware that the Nettles would incur costs and attorney's fees in doing so.

The bankruptcy court acted within its power in awarding punitive damages under section 362(k) based upon its oral findings of fact.  The bankruptcy court concluded that Credit Nation knew of the Nettles's bankruptcy prior to repossession and ***knowingly*** violated the automatic stay by repossessing their vehicle.  If a mistaken, yet willful, automatic stay violation weighs against the imposition of punitive damages as stated in *Cox*, it follows that an intentional and deliberate automatic stay violation weighs in favor of imposing punitive damages.  *See In re Meeks*, 260 B.R. 46, 48 (Bankr. M.D. Fla. 2000) (awarding punitive damages and discharging a debtor's indebtedness pursuant to section 362(h) when "a creditor experienced in collection and bankruptcy matters, knew that a stay was in effect and willfully chose to disregard it" by repossessing the debtor's automobile); *Edmondson v. Arrowood* (*In re Edmondson*), No. 02-80193-W, 2002 WL 32389899, at *2 (Bankr. D.S.C. July 30, 2002) ("[T]he situation is exacerbated by the facts that Defendant knew of Plaintiffs' pending bankruptcy case, took matters into his own hands, flouted bankruptcy laws, and repossessed the Truck. When a creditor blatantly violates the automatic stay, it risks being assessed

19

punitive damages."). The bankruptcy court further concluded that Credit Nation exacerbated the situation by refusing to return the vehicle for a period of ten days despite knowing that its repossession violated the automatic stay, despite receiving post-repossession notice of the Nettles's bankruptcy, and despite receiving verification that the vehicle was properly insured. As noted above, the bankruptcy court also considered the representation that the Nettles could "make arrangements to pick . . . up" the vehicle in Austell, Georgia as an aggravating factor. Bankruptcy courts have not hesitated to punish creditors whose actions evince "an arrogant defiance of federal law." *Johnson v. Precision Auto Sales* (*In re Johnson*), No. 06–00164, 2007 WL 2274715, at *11 (Bankr. N.D. Ala. Aug. 7, 2007) (internal quotation marks and citation omitted) (among other things, the creditor's refusal to turnover unlawfully repossessed vehicle after repeated notices of the debtor's bankruptcy weighed in favor of awarding punitive damages); *see also In re White*, 410 B.R. 322, 327 (Bankr. M.D. Fla. 2009) ("[P]unitive damages are appropriate when the creditor's actions demonstrate a willful disrespect or arrogant defiance of the bankruptcy laws." (citations omitted)).

As noted above, the court does not disagree with the bankruptcy court's description of Credit Nation's conduct as "egregious." When a creditor knowingly and intentionally violates an automatic stay and the debtor's fundamental rights thereunder and refuses to mitigate the effects of its unlawful conduct, "appropriate circumstances" exist for the imposition of punitive damages pursuant to section 362(k). *See In re Gholston*, No. 6:11-bk-17200-ABB, 2012 WL 639288 (Bankr. M.D. Fla. Feb. 27, 2012) (creditor's repossession and

20

eleven-day retention of debtor's vehicle warranted punitive damages because creditor repossessed and retained the vehicle with full knowledge of the underlying bankruptcy proceedings and automatic stay).[8]   Therefore, the court concludes that the discharge was appropriate pursuant to section 362(k).

V. <u>CONCLUSION</u>

For the foregoing reasons, the portion of the bankruptcy court's Judgment, (doc. 1-1), cancelling the Nettles's indebtedness to Credit Nation is due to be affirmed.  An Order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE**, this 24th day of March, 2013.

_Sharon Lovelace Blackburn_
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE

---

[8]  Had Credit Nation offered any justification for its actions, this result may have been different.  Its failure to do so left the bankruptcy court to logically conclude that Credit Nation knew that its repossession and retention of the Nettles's vehicle violated the automatic stay.